# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The person of Brian Jeffrey Valencia, Date of Birth ▮▮▮▮▮▮▮, Social Security Account Number ▮▮▮▮▮▮▮ | Case No. 20-sw-00048-NYW |

## APPLICATION FOR A SEARCH WARRANT

I, Jon E. Beutelschies, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property located in the District of Colorado *(identify the person or describe the property to be searched and give its loction)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C., Section 1951 | Hobbs Act |
| Title 21, U.S.C., Section 843(b) | Prohibited use of a telephone |
| Title 18, U.S.C., Section 371 | Conspiracy |

☒ Continued on the attached affidavit, which is incorporated by reference.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/Jon E. Beutelschies*
*Applicant's signature*

Jon E. Beutelschies, Special Agent, FBI
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: **22 Jan 2020**

*Nina Y. Wang*
*Judge's signature*

City and state: Denver, CO

Nina Y. Wang
United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### DESCRIPTION OF LOCATION TO BE SEARCHED

The person of Brian Jeffrey Valencia, Date of Birth ▮▮▮▮▮▮▮ Social Security Account Number ▮▮▮▮▮▮.

## ATTACHMENT B

### DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

The following items, located on the person of Brian Jeffrey Valencia, as more fully described in Attachment E, which constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of violations of Title 18, United States Code, Section 1951; Title 21, United States Code, Section 843(b) and Title 18, United States Code, Section 371 (Conspiracy) (the "Subject Offenses").

1. Any cellular telephones
2. Sim cards

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Jon E. Beutelschies, a Special Agent with the Federal Bureau of Investigation being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for over twenty-two years. I am currently assigned to the Colorado Springs Resident Agency of the FBI wherein my duties and responsibilities include the investigation of public corruption and other criminal matters. I have authored numerous search warrant affidavits and have received training in the processing and examination of digital evidence.

2.      This affidavit is submitted in support of an application for a search warrant for the person of Brian Jeffrey Valencia, Eligio Lee Camacho and Eligio Johnny Camacho III (hereinafter "Subject Premises"), there being probable cause to believe that located in the place described in pertinent Attachments A are items described in pertinent Attachments B being evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1951; Title 21, United States Code, Section 843(b) and Title 18, United States Code, Section 371 (Conspiracy) (the "Subject Offenses").

3.      Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of the Subject Offenses will be found at Subject Premises.

4.      The information contained within the affidavit is based on my training and experience, my participation in the investigation as well as information imparted to me by other law enforcement officers involved in this investigation.

## PROBABLE CAUSE

5.      In or about March 2019, the FBI began investigating Eligio Lee Camacho ("E. CAMACHO") a resident of Rocky Ford, Colorado, for narcotics distribution. During the investigation, a FBI Confidential Human Source ("CHS") was utilized and had numerous discussions with E. CAMACHO about narcotics and E. CAMACHO's association with then Rocky Ford Police Department ("RFPD") Officer Brian Jeffrey Valencia ("VALENCIA").

6.      In October 2018, Task Force Officer Joseph Cahill contacted Francine Gonzales, Chief of Investigations, Colorado Department of Revenue ("CDOR"), Motor Vehicle Investigations Unit, for assistance with creating a fictitious Colorado license plate record for use in the investigation. Gonzales created the following record: Colorado license plate BML194, associated with a 2007, black Honda Civic, with a registered owner of Jose Torrez, address 2134 S. Richfield Way, Aurora, Colorado, 80013-4131.

7.     On March 8, 2019, E. CAMACHO met with the CHS at the CHS's apartment in Rocky Ford. The CHS discussed purchasing marijuana and methamphetamine from E. CAMACHO and obtaining protection from the police for his/her drug trafficking activities. E. CAMACHO said that he was "good with the police" and told the CHS that RFPD Officer Brian Valencia (VALENCIA) was a friend and had provided information to him in the past. E. CAMACHO said that VALENCIA helped his father, Eligio Johnny Camacho III ("J. CAMACHO"), avoid a domestic violence arrest. The CHS provided E. CAMACHO with Colorado license plate number BML194 and said that he/she would pay VALENCIA for the information regarding the registered owner. E. CAMACHO said that VALENCIA would run it when he returned to duty.

8.     On March 12, 2019, the CHS met with E. CAMACHO in Rocky Ford and their conversation was recorded. The CHS asked what was up with E. CAMACHO's boy, referring to VALENCIA, and E. CAMACHO said he was waiting for the cop to let him know what's up. E. CAMACHO said that he (VALENCIA) is off duty right now, or he would have already done it. CHS said he had five points ($500.00) for him and E. CAMACHO said, "trust me, I need the cheese" (money). E. CAMACHO said that VALENCIA told him that he could get the address, but that E. CAMACHO had to wait for him (to get back to duty), so there would be no questions asked. Later, E.CAMACHO said, "Let me call my dad, I'll actually see when that fool gets back on duty." E. CAMACHO called his father (J. CAMACHO) in front of the CHS and their conversation can be heard on the recording. E. CAMACHO said, "Dad, so when does Valencia get back, the, on Sunday?" J. CAMACHO said that he thought so and that he would find out. E. CAMACHO said that he needed to get the address and J. CAMACHO said to give it to him and that he would give it to him (VALENCIA). E. CAMACHO said, "yeah the license plate number" and J. CAMACHO said, "whatever you need, don't say it out loud, whatever you need" and E. CAMACHO said that he would text J. CAMACHO the number. The CHS provided E. CAMACHO's cell phone number to investigating Agents as 719-468-0595.

   i. According to cell phone records provided by Verizon Wireless, on March 12, 2019, at approximately 6:06 p.m., 719-468-0595 (E. CAMACHO) called 719-469-9203. I believe that this is the call that E. CAMACHO placed to his father, J. CAMACHO, as referenced above. Although Verizon Wireless records do not show a subscriber for 719-469-9203, I believe, based on the call above and public source information, that the user of the phone number is J. CAMACHO.

   ii. According to cell phone records provided by Verizon Wireless, on March 12, 2019, between 6:14 p.m. and 6:18 p.m., 719-469-9203 (J. CAMACHO) and 719-468-9403 exchanged numerous text messages. Cell phone records provided by Verizon Wireless show that the subscriber for 719-468-9403 is Bryan Valencia, address 405 Bradus, La Junta, Colorado. VALENCIA was interviewed by your Affiant on December 5, 2019, and provided his cell phone number as 719-468-9403.

2

9. On March 13, 2019, at approximately 8:56 p.m., Colorado license plate BML194 was queried through the Colorado Crime Information Center ("CCIC"). According to records from CCIC, Colorado license plate BML194 was queried by Nikolai Scott Silvia, who I believe is a dispatcher at the Rocky Ford Police Department, and the requesting Officer is referenced as "BVALE", which I believe is a reference to Brian Valencia (VALENCIA).

    i. According to cell phone records provided by Verizon Wireless, on March 13, 2019, between approximately 8:49 p.m. and approximately 8:54 p.m., 719-469-9203 (J. CAMACHO) sent two text messages to and received three text messages from 719-468-9403 (VALENCIA). On the same date, at approximately 9:12 p.m., 719-469-9203 (J. CAMACHO) called 719-468-0595 (E. CAMACHO) and the call lasted approximately 62 seconds.

10. On March 13, 2019, at approximately 9:16 p.m., E. CAMACHO called the CHS and their conversation was recorded. E. CAMACHO told the CHS that the number did not come up as nothing and asked the CHS if he/she was sure that it was the right number. E. CAMACHO said that he (VALENCIA) ran it right here in front of me and it came up not-existent. E. CAMACHO said that he can run it one more time tonight and to make sure it is the right number and that he (VALENCIA) can only run so many a night.

> i. To test the license plate prior to its use in the investigation, Task Force Officer Joe Cahill had another law enforcement officer query the license plate through CCIC and the plate came back as "No Record." TFO Joe Cahill researched the issue and found that the plate was correctly entered into the CCIC system, but for reasons unknown, a secondary request had to be made by the Officer/Agency conducting the query to get the actual record as noted prior.

11. On March 15, 2019, the CHS called E. CAMACHO and their conversation was recorded. During the conversation, the CHS asked if E. CAMACHO was going to take care of him (VALENCIA), or if the CHS needed to "tip" him some "cheese" (money) for his time. E. CAMACHO said that he already paid him (VALENCIA) two bills ($200) to run the number for him.

12. On December 5, 2019, SA Jon E. Beutelschies and Task Force Officer Joe Cahill interviewed VALENCIA and the interview was recorded. VALENCIA said he knew E. CAMACHO and that he used to talk to him briefly. He said that they (police) used to do property watches around a big shed where they (Camachos) stored equipment. When asked about his relationship with J. CAMACHO, VALENCIA said that it was, "nothing." VALENCIA said he talked to J. CAMACHO a couple of times about a buying a truck and J. CAMACHO reached out to him about a truck in approximately February or March, but he never went out to look at it. VALENCIA said he would not call J. CAMACHO or E. CAMACHO just to talk and do not consider either of them really a friend. When asked if he ever ran a license plate for E. CAMACHO, VALENCIA said, "no, um." When asked the

3

same about J. CAMACHO, VALENCIA said, no, but explained that there was one time that he was driving by (Camacho's property) at 4:30 or 5:00 in the morning and there was a truck in the area and he ran the plate for himself because it was on a property watch. VALENCIA said he asked J. CAMACHO a few days afterwards if he knew who the person was and if they were allowed to be on his property, but that's the only time about a license plate that he could recall. When asked if J. CAMACHO ever asked him to run a license plate, he said, "not that I recall." When asked if E. CAMACHO ever asked him to run a license plate, VALENCIA said, "no, he never did," and that he did not really talk to E. CAMACHO much at all. VALENCIA was shown a copy of the CCIC log showing that he ran the license plate as referenced prior and he said he honestly could not remember. VALENCIA said he never got paid money and said, "I may have ran a plate, (unt) I did obviously run a plate, but it wasn't to benefit myself, or I didn't get any benefit out of it I never got paid nothing." VALENCIA denied getting paid $200.00 to run the plate and said that he would take a polygraph. VALENCIA said if he recalled right, there was a vehicle around his place and J. CAMACHO wanted to know who it was because that place was on a property watch. VALENCIA said he does not remember if J. CAMACHO gave him a plate to run, but he knows that it was not E. CAMACHO. VALENCIA said he obviously ran the plate, but he did not get any money for it. VALENCIA said he gave J. CAMACHO the information from the plate, because it was his property. When asked if J. CAMACHO texted the plate number to him, VALECNIA said, "no" and that he did not think so and did not remember. Regarding the Domestic Violence incident between J. CAMACHO and his girlfriend, VALENCIA said that they were both out of control and he did not see any physical injuries and she did not cooperate. VALENCIA said that J. CAMACHO talked to him a day or two later and thanked VALENCIA for not taking him to jail. VALENCIA said he never gave J. CAMACHO a heads up about the cops coming. VALENCIA said he heard that J. CAMACHO was a drug trafficker, but he was never involved in any kind of drug trafficking with him. VALENCIA said that he did run a license plate, absolutely, but he did not know it was for any personal gain of drugs. VALENCIA said he did not do anything that he would say was criminal and said that giving him (J. CAMACHO) the license plate information was wrong. VALENCIA said that they (Camachos) never asked him to participate in illegal activity. VALENCIA said that he ran that plate, but it wasn't for an illegal activity. VALENCIA provided his cell phone number as 719-468-9403.

13. During the course of the investigation, the CHS talked to E. CAMACHO about having VALENCIA provide protection for his/her drug trafficking business and about CHS paying VALENCIA directly. On March 19, 2019, E. CAMACHO told the CHS in a recorded telephone call that VALENCIA was out and did not want to do it. E. CAMACHO said VALENCIA got all nervous because the CHS wanted to pay him directly and VALENCIA said, "fuck that." E. CAMACHO said that VALENCIA thought that E. CAMACHO was going to give him the money and he did not want to meet anyone else. E. CAMACHO said that VALENCIA was out and they would need to find someone else.

14. The CHS also talked to E. CAMACHO about having VALENCIA conduct a traffic stop on a drug associate to steal money in the vehicle of which he would get a part of (as part of a controlled operation by the FBI). According to E. CAMACHO, VALENCIA was afraid that the parties he was ripping off would figure out who it was and it would come back on him. E. CAMACHO said that VALENCIA was afraid they would kill him and that he would not risk his life and would not do it.

15. On January 16, 2020, your Affiant received information from Verizon Wireless pursuant to an Administrative Subpoena regarding telephone numbers 719-468-0595 (E. CAMACHO), 719-469-9203 (J. CAMACHO) and 719-468-9403 (VALENCIA). My review of the data provided by Verizon Wireless indicates that all three numbers are active as of January 9, 2020.

16. Since the inception of the investigation, VALENCIA resigned from the RFPD and he is currently working for the United States Postal Service in Fowler, Colorado.

## CONCLUSION

17. Based on the investigation described above, probable cause exists to believe that at the places described in pertinent Attachment A will be found evidence, fruits, and instrumentalities of a violation of the Subject Offenses.

18. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in pertinent Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

                                        *s/Jon Beutelschies*
                                        Jon Beutelschies, Special Agent
                                        Federal Bureau of Investigation

SUBSCRIBED and SWORN before me by reliable electronic means this 22nd day of January, 2020.

                                        BY THE COURT:

                                        NINA Y. WANG
                                        UNITED STATES MAGISTRATE JUDGE
                                        DISTRICT OF COLORADO

Application for search warrant was reviewed and is submitted by Zachary Phillips, Assistant United States Attorney.